UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SIMONIZ USA , INC. | : |
|     Plaintiff, | : |
| | : |
| v. | :   No. 3:16-cv-00688 (VAB) |
| | : |
| DOLLAR SHAVE CLUB, INC. | : |
|     Defendant. | : |

**RULING ON DEFENDANT'S MOTION TO DISMISS**

Plaintiff, Simoniz USA, Inc. ("Simoniz"), brought this action against Defendant, Dollar Shave Club, Inc. ("Dollar Shave Club" or "DSC") seeking a declaratory judgment and injunctive relief. Dollar Shave Club now moves to dismiss Simoniz's Complaint under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction. For the reasons outlined below, Dollar Shave Club's Motion to Dismiss is **GRANTED**.

I.     FACTUAL BACKGROUND

This action arises out of a trademark dispute between two U.S.-based companies: Simoniz, a company that sells cleaning products, and Dollar Shave Club, a company that sells personal care products. Compl. ¶¶ 8, 11, ECF No. 1.

In November 2015, Simoniz filed an application with the European Union Intellectual Property Office ("EUIPO") seeking to register the trademark "DOLLAR CLEAN CLUB" for use in the European Union ("E.U.") in connection with its cleaning supplies. EUTM File Information at 1, Def. Ex. D, ECF No. 13-5. At that time, Dollar Shave Club's "DOLLAR SHAVE CLUB" trademark was already registered in both the E.U. and the U.S. DSC EU Registration, Def. Ex. B, ECF No. 13-3; DSC US Registration, Def. Ex. A, ECF No. 13-2. In

January 2016, after receiving notice of Simoniz's E.U. application, Dollar Shave Club filed a formal opposition, citing concerns about the potential for confusion between the DOLLAR CLEAN CLUB label and the similarly named DOLLAR SHAVE CLUB brand. *Id.* Around two months later, in March 2016, Simoniz applied to register its DOLLAR CLEAN CLUB trademark in the U.S. and created a website featuring this mark. Simoniz US Registration Application, Pl. Ex. C, ECF No. 23-3; Gorra Dec. ¶ 2, ECF No. 23-6.

In response to Dollar Shave Club's opposition to the E.U. registration application, Simoniz's attorney reached out to Dollar Shave Club, and in April 2016 the parties spoke over the phone about the opposition. Bouwer Dec. ¶ 3, ECF No. 13-13. On the call, Dollar Shave Club explained to Simoniz that it was concerned about the potential for confusion between the brands of the two companies, as some of the products sold by Simoniz could be seen as overlapping with the products sold by Dollar Shave Club. *Id.* Simoniz disagreed, insisting that the products were different and that confusion was unlikely. *Id.* On April 22, 2016, after the call, Simoniz sent a follow-up e-mail to Dollar Shave Club providing them with a link to Simoniz's "Dollar Clean Club" product website, www.dollarclean.com, and requesting in writing that Dollar Shave Club withdraw its opposition to Simoniz's E.U. application. 4/22/2016 E-mail, Def. Ex. H, ECF No. 13-9.

On April 28, 2016, Dollar Shave Club responded to Simoniz's e-mail, explaining that, based on its review of Simoniz's Dollar Clean Club website, Dollar Shave Club still believed that confusion between the brands was likely. 4/28/2016 E-Mail, Def. Ex. I, ECF No. 13-10. At the conclusion of its e-mail, Dollar Shave Club demanded that Simoniz "immediately withdraw its trademark applications for DOLLAR CLEAN CLUB in the US and Europe and agree in writing to cease all use of the mark DOLLAR CLEAN CLUB" in exchange for Dollar Shave

Club withdrawing its opposition filing. *Id*. Simoniz responded with a letter, dated May 4, 2016, declining these demands and recommending that the principals of the two companies arrange a meeting. Simoniz May 2016 Letter, Def. Ex. J, ECF No. 13-11. That same day, before any meeting between the companies had been arranged, Simoniz filed this lawsuit seeking a declaratory judgment from this Court stating that the Simoniz's use of the "DOLLAR CLEAN CLUB" trademark in the U.S. does not infringe U.S. law. Def. Mem. in Supp. at 5.

After the complaint was filed, Dollar Shave Club took a closer look at Simoniz's Dollar Clean Club website and found that the website was not fully operational. *See* Brunon Dec., ECF No. 13-16. None of the cleaning products offered on the website appeared to actually use the DOLLAR CLEAN CLUB mark — the website initially did not feature this mark at all, and when Dollar Shave Club brought this to Simoniz's attention, the website was later edited to include images of a DOLLAR CLEAN CLUB logo superimposed on the images of the featured cleaning products. Bouwer Dec. ¶¶ 7-8; Bouwer Dec. Ex. A. The specific DOLLAR CLEAN CLUB product that was featured in Simoniz's U.S. trademark application was not included on this website; no terms of service, terms of use or privacy policy were featured; and none of the links to "Dollar Clean Club" social media pages actually led to any of the listed pages. Brunon Dec. ¶¶ 11-12.

In order to determine whether the "Dollar Clean Club" trademark was actually being used, Dollar Shave Club attempted to order one of the products offered on the website. *Id*. The 10% shipping discount advertised on the website was not applied to the order, and the payment for the order was routed to a personal PayPal account in the name of "William Gorra," the President of Simoniz. *Id*. at ¶¶ 15-16. The product was never delivered, and the payment was ultimately returned. *Id*. at ¶ 18.

## II.     STANDARD OF REVIEW

Fed. R. Civ. P. 12(b)(1) allows for the dismissal of a complaint "when the district court lacks the statutory or constitutional authority to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). Under the Declaratory Judgment Act, this Court has authority to issue a declaratory judgment "[i]n a case of actual controversy within this jurisdiction." 28 U.S.C. § 2201(a). Dismissal of a declaratory judgment action for lack of subject matter jurisdiction is appropriate where there is no "actual controversy" between the parties. *See Nike, Inc. v. Already, LLC*, 663 F.3d 89, 94 (2d Cir. 2011), *aff'd*, 133 S. Ct. 721 (2013) (affirming dismissal of intellectual property declaratory judgment action for failure to meet "case or controversy" requirement); *Indigodental GMBH & Co. KG v. Ivoclar Vivadent, Inc.*, No. 08 Civ. 7657 (RJS), 2008 WL 5262694 (S.D.N.Y. Dec. 10, 2008) (dismissing declaratory judgment action for lack of actual controversy); *Lyndonville Sav. Bank & Trust Co. v. Lussier,* 211 F.3d 697, 700–01 (2d Cir. 2000) ("If subject matter jurisdiction is lacking, the action must be dismissed").

To constitute an "actual controversy" for purposes of a declaratory judgment action, there must be a "substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (citing *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). Before the Supreme Court's ruling in *MedImmune*, a plaintiff needed to establish a "reasonable apprehension of imminent suit" in order to demonstrate an "actual controversy" for declaratory judgment purposes. *Bruce Winston Gem Corp. v. Harry Winston, Inc.*, No. 09 Civ. 7352 (JGK), 2010 WL 3629592 at *4 (S.D.N.Y. Sept. 16, 2010). The Supreme Court in *MedImmune* eliminated this "imminent suit" requirement, but left intact the

body of case law requiring that, in the trademark infringement context, a declaratory judgment plaintiff must meet the "immediacy and reality" requirement by showing that it actually had "sufficient intent and apparent ability" to use the allegedly infringing trademark. *Id.* (citing *Starter Corp. v. Converse, Inc.*, 84 F.3d 592, 595-596 (2d Cir. 1996); *AARP v. 200 Kelsey Assocs., LLC*, No. 06 Civ. 81, 2009 WL 47499 at *7 (S.D.N.Y. Jan. 8, 2009)).  The plaintiff's intent and ability to use the mark must be more than a "vague or general desire." *Starter*, 84 F.3d at 596.

"[A] district court possesses discretion in deciding whether to entertain a declaratory judgment action." *Gianni Sports Ltd. v. Metallica*, No. 00 Civ. 0937 (MBM), 2000 WL 1773511 at *4 (S.D.N.Y. Dec. 4, 2000) (citing *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995)).  In order to survive a motion to dismiss, the plaintiff seeking the declaratory judgment bears the burden of proving by a preponderance of the evidence that subject matter jurisdiction exists. *Makarova*, 201 F.3d at 113.  "[W]here jurisdictional facts are disputed, the Court has the power and the obligation to consider matters outside the pleadings, such as affidavits, documents, and testimony, to determine whether jurisdiction exists." *Bruce Winston Gem Corp.*, 2010 WL 3629592 at *1; *Makarova*, 201 F.3d at 113 ("In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court…may refer to evidence outside the pleadings").

### III.     DISCUSSION

Dollar Shave Club argues that dismissal of Simoniz's declaratory judgment action is appropriate because there is no "substantial controversy" between the parties of sufficient "immediacy and reality" as required to confer subject matter jurisdiction.  Def. Mem. in Supp. at 13.  Specifically, Dollar Shave Club argues that the filing of an opposition in a foreign trademark

5

proceeding and an e-mail containing "cease and desist" language do not constitute an actual substantial controversy between the parties as a matter of law. *Id*. Dollar Shave Club also argues that Simoniz has failed to show sufficient "definite intent and apparent ability" to actually use the allegedly infringing mark in commerce, as required to show immediacy and reality for declaratory judgment purposes. *Id*. at 19-20.

        **a.**        **Substantial Controversy**

The conflict between the parties over Simoniz's DOLLAR CLEAN CLUB trademark has its roots in a trademark proceeding abroad. Although Simoniz's complaint makes no reference to the foreign proceeding and rests only on the "cease and desist letter" sent by Dollar Shave Club in April 2016, it is undisputed that Dollar Shave Club's letter was sent in response to Simoniz's repeated requests that Dollar Shave Club withdraw its opposition in that European proceeding. However, while Dollar Shave Club did not formally threaten any trademark infringement claim on the part of Simoniz, it did include a demand at the conclusion of its letter that Simoniz stop using the mark in the U.S. as well as in the E.U. Although Dollar Shave Club's opposition to the Simoniz trademark application in Europe does not constitute a "substantial controversy" for declaratory judgment purposes, its demand that Simoniz cease all use of the contested trademark may rise to this level.

        *i. Opposition to Trademark Registration*

Several cases in this Circuit have already determined that a contested trademark registration proceeding is not sufficient to constitute an "actual controversy" for declaratory judgment purposes. *See Avon Products, Inc. v. Moroccanoil, Inc.*, No. 12 Civ. 4507 (GBD), 2013 WL 795652 (S.D.N.Y. Mar. 4, 2013) (dismissing declaratory judgment action for lack of substantial controversy where "cease and desist" letter was in connection with Canadian

trademark proceeding); *Vina Casa Tamaya S.A. v. Oakville Hills Cellar, Inc.*, 784 F.Supp.2d 391 (S.D.N.Y. 2011) (dismissing declaratory judgment action for lack of substantial controversy where defendants objected to plaintiff's registration of trademark and refused settlement offers that allowed plaintiff to continue using the mark). This is true even when the contested trademark proceeding is based in the U.S. *Id.*

In *Topp-Cola Co. v. Coca-Cola Co.*, the Second Circuit dismissed a declaratory judgment action that was based on the defendant's opposition to the plaintiff's application for trademark registration in Puerto Rico, reversing the lower court's denial of the defendant's motion to dismiss. 314 F.2d 124 (2d Cir. 1963). The court found that "no useful purpose would be served by an adjudication in the district court of the plaintiff's right to registration in Puerto Rico or the defendant's right to oppose such registration[,]" stating that "[t]he Declaratory Judgments Act may not be used simply to remove a controversy from a forum where it properly belongs" and concluding that "the district court abused its discretion in accepting jurisdiction over this controversy." *Id.* at 126-127. Accordingly, to the extent that the instant declaratory judgment action seeks to resolve disagreements regarding Simoniz's E.U. trademark application, the Court finds that this particular controversy is best resolved by the European trademark office responsible for that registration, not by this Court.

### ii. "Cease and Desist" Demand

The trademark dispute here does not end with Dollar Shave Club's formal opposition to Simoniz's European trademark registration. On April 28, 2016 Dollar Shave Club sent an e-mail to Simoniz including a specific demand that Simoniz "cease all use of the mark," followed by language that "DSC expressly reserves the right to assert any other factual or legal positions as additional facts come to light." 4/28/2016 E-mail, Def. Ex. I, ECF No. 13-10. Simoniz argues

that this "cease and desist letter" alone is sufficient to confer this Court with subject matter jurisdiction. Pl. Mem. in Opp. at 4-6. Although the letter does not explicitly threaten any legal action, Simoniz argues that Dollar Shave Club's letter amounts to a claim of trademark infringement under the Lanham Act because the language used by Dollar Shave Club closely mirrors the statutory language for a trademark infringement claim. *Id*.

A "cease and desist" letter issued in connection with a trademark registration application does not necessarily state a substantial controversy sufficient for a declaratory judgment action, particularly where it does not contest the use of the trademark. In *Vina Casa Tamaya*, another district court in this Circuit found that a declaratory judgment plaintiff failed to show an "actual controversy" where the defendant's "cease-and-desist letter demanded simply that [plaintiff] abandon its pending trademark application" and did not make any demands regarding use of the mark. 784 F.Supp.2d at 395.

Here, Dollar Shave Club's letter did include a demand regarding Simoniz's use of the mark, making this dispute more analogous to the dispute in *Sammon v. Hachette Filipacchi Presse* than the one in *Vina Casa Tamaya*. In *Sammon,* the defendant's cease-and-desist letter was sent in response to a trademark registration application but also included language demanding that plaintiffs "'cease all use' of the mark[.]" 15-cv-00194 (VM)(SN), 2016 WL 1599492 at *3 (S.D.N.Y. Apr. 20, 2016). The court concluded that there was a substantial controversy sufficient to confer subject matter jurisdiction, finding that, "even assuming that the cease and desist letter did not threaten suit, the letter at least established that the parties have 'adverse legal interests' over the use of the mark sufficient to establish a case or controversy." *Id*.

There are, however, several facts distinguishing this case from the controversy in *Sammon*. Unlike Dollar Shave Club, the defendant company in *Sammon* explicitly threatened litigation in the context of settlement discussions, and unlike this case, the plaintiff in *Sammon* made substantial use of the trademark in question before the complaint was filed. Nonetheless, because the "cease-and-desist" language reflected in Dollar Shave Club's April 2016 e-mail directly addresses Simoniz's use of the contested mark, the "cease-and-desist" letter may be sufficient to demonstrate a "substantial controversy" between the parties regarding Simoniz's use of the DOLLAR CLEAN CLUB mark in the U.S.

### b. Immediacy and Reality

A "substantial controversy" alone, however, is not sufficient to confer subject matter jurisdiction for purposes of a declaratory judgment action. *Bruce Winston Gem Corp.*, 2010 WL 3629592 at *4. The broader context of this controversy must also support a finding of "immediacy and reality" sufficient to justify the Court's involvement. *Id.* In order to meet this standard, the plaintiff must show both "definite intent and apparent ability" to use the trademark in question. *GMA Accessories, Inc. v. Idea Nuova, Inc.*, 157 F. Supp. 2d 234, 244 (S.D.N.Y. 2000). "The 'definite intent and apparent ability' standard was created to prevent parties with merely a 'vague and unspecific desire to use a mark' from seeking an opinion addressing hypothetical facts." *Gianni Sports Ltd.*, 2000 WL 1773511 at *3 (citing *Golden Gulf Corp. v. Jordache Enter., Inc.*, 896 F.Supp. 337, 340 (S.D.N.Y. 1995)).

The facts here do not suggest that Simoniz actually possessed a "definite intent and apparent ability" to make use of the trademark in the U.S., when it initiated this declaratory judgment action. Simoniz's only basis for its alleged intent and ability to use the DOLLAR CLEAN CLUB trademark is its creation and maintenance of a website, www.dollarclean.com, a

9

website created after Dollar Shave Club filed its opposition in the European trademark proceeding. Pl. Mem. in Opp. at 10. Dollar Shave Club has submitted detailed screen shots depicting the state of the website at the time the complaint was filed, and although the website was accessible to the public, it was not functional. *See* Brunon Dec., ECF No. 13-16. Only three products were offered for sale on the website, none of which appeared to have actually been manufactured with a "DOLLAR CLEAN CLUB" logo, and an attempt to order products revealed that it was impossible to actually place an order through the website. *Id*. Simoniz does not dispute any of these documented irregularities in its website; instead, it argues that the securing of a domain name and the activation of a website, together with its registration of the trademark, is sufficient to demonstrate imminent intent and use for purposes of an "actual case of controversy." Pl. Mem. in Opp. at 12.

In support of its argument, Simoniz relies on a Southern District of New York case, *Menashe v. Secret Catalogue, Inc*., in which the court found "definite intent and apparent ability" for purposes of a declaratory judgment action based, in part, on the plaintiff's maintenance of a website featuring the disputed trademark. No. 05 Civ. 239 (HB), 2005 WL 1580799 (S.D.N.Y. Jul. 7, 2005). Simoniz's reliance on *Menashe*, however, is misplaced. There, plaintiffs demonstrated "definite intent and apparent ability" through much more extensive actions than those evidenced here. In addition to registering a domain name, retaining a web-designer, and filing an application for registration of its trademark, the *Menashe* plaintiffs "paid for the production of and received four hundred samples of their product, as well as eight final articles that would serve as prototypes and have engaged in activities including interviews and photo shoots to promote their lingerie line." *Menashe*, 2005 WL 1580799, at *6. Based on its conclusion that "Plaintiffs have clearly demonstrated 'substantial steps' towards a launch of their

10

lingerie line and 'meaningful preparation' toward production as required by the case law[,]" the court denied the defendant's motion to dismiss. *Id*. No such "substantial steps" existed here.

Indeed, where a declaratory judgment action is based on trademark infringement and a party "has not secured—or attempted to secure—the central components of the formula ordinarily required for production, the case or controversy standard is unlikely to be satisfied." *AARP v. 200 Kelsey Associates, LLC*, No. 06 CIV. 81 (SCR), 2009 WL 47499, at *8 (S.D.N.Y. Jan. 8, 2009). "Where, however, a party has produced prototypes or samples of the allegedly infringing products, begun soliciting—and advertising to—potential customers, or otherwise invested significant sums of money in preparation for producing the goods, the case or controversy requirement is likely to be satisfied." *Id*. at *9. Here, Simoniz has made some steps towards demonstrating use of its disputed trademark by securing a website and preparing the basic framework for the mark to be used in commerce; however, the controversy between the parties regarding Simoniz's use of the contested trademark in the U.S. does not appear to have been "immediate or real" at the time this action was filed.

"Plaintiff bears the burden of proving the Court's jurisdiction by a preponderance of the evidence." *Makarova*, 201 F.3d at 113. Simoniz has not established that it had a "definite intent and apparent ability" to use the trademark in the U.S. at the time it requested a declaratory judgment. In the absence of any imminent use of the allegedly infringing mark in the U.S., the parties' dispute appears to lie solely with Simoniz's registration application in Europe, which is not sufficient to confer subject matter jurisdiction on this Court. Accordingly, Simoniz has failed to establish an "actual case of controversy" as required to survive a motion to dismiss, and this Court lacks subject matter jurisdiction to resolve this particular trademark dispute.

### c. Discretionary Dismissal

In addition to Dollar Shave Club's arguments regarding the lack of subject matter jurisdiction, Dollar Shave Club urges this Court to exercise its discretion to dismiss the action, arguing that, given that the dispute is fundamentally about a foreign trademark proceeding, the exercise of jurisdiction would be inappropriate. Def. Mem. in Supp. 23-25. When faced with a potentially actionable declaratory judgment action, district courts have been vested with "discretion in the first instance, because facts bearing on the usefulness of the declaratory judgment remedy, and the fitness of the case for resolution, are peculiarly within their grasp." *MedImmune, Inc.*, 549 U.S. at 136.

The Court agrees with Dollar Shave Club that the exercise of jurisdiction would not be appropriate in this case. District courts are instructed to entertain a declaratory judgment action "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue; and (2) when it will terminate and afford relief from uncertainty, insecurity, and controversy giving rise to the proceeding." *Continental Cas. Co. v. Coastal Sav. Bank,* 977 F.2d 734, 737 (2d Cir. 1992); *see also Broadview Chem. Corp. v. Loctite Corp.,* 417 F.2d 998, 1001 (2d Cir. 1969) ("if either of these objectives can be achieved the action should be entertained"). As discussed above, this particular trademark dispute originated in a foreign trademark registration proceeding. Considering the lack of immediacy surrounding the parties' disagreements about Simoniz's use of the contested trademark in the U.S., the Court concludes that the rights of the parties would best be resolved through the ongoing E.U. trademark proceeding rather than through a declaratory judgment proceeding in the District of Connecticut. *See Crane v. Poetic Prod. Ltd.*, 351 F. App'x 516 (2d Cir. 2009) (affirming the district court's

decision to decline the exercise of jurisdiction over declaratory judgment action regarding copyright issue where European courts could effectively resolve the parties' dispute).

Accordingly, assuming *arguendo* that the Court does have subject matter jurisdiction over this dispute, the Court nevertheless declines to exercise jurisdiction in this declaratory judgment action, and the case is properly dismissed.

## IV. CONCLUSION

Dollar Shave Club's Motion to Dismiss is **GRANTED**. The Clerk of Court is directed to close this case.

SO ORDERED this 9th day of December at Bridgeport, Connecticut.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE